UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE G.,[1]

                                        Plaintiff,            Case # 23-CV-6076-FPG

v.                                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

## INTRODUCTION

Plaintiff Jose G. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In September 2015, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 150. He alleged disability since July 2015. *Id.* In October 2021, Administrative Law Judge Brian Kane ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 16-27. In December 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

II.  **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

2

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has several severe impairments. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment. Tr. 19.

Next, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work. Tr. 21. At step four, the ALJ found that Plaintiff could perform past relevant work. Tr. 26. In the alternative, at step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 26-27. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

**II.     Analysis**

Plaintiff argues that remand is warranted because the ALJ failed to properly consider the opinion of treating physician Elizabeth Osborn, M.D. *See* ECF No. 10-1 at 3. Dr. Osborn identified several significant functional limitations resulting from Plaintiff's low back pain and degenerative disc disease. Tr. 1336-39. The Court concludes that remand is not warranted.

The Court begins with a summary of the relevant evidence. In his original application, Plaintiff did not identify back pain as one of his impairing conditions. Tr. 150. Nor did he do so during his consultative examination with Richard Weiskopf, M.D., in November 2015. Tr. 933-37. At that time, Dr. Weiskopf opined that Plaintiff had no limitations in sitting, standing, bending, lifting, climbing, or carrying, and only a mild limitation in walking. Tr. 936.

In January 2016, Plaintiff complained of pain in his lower back. Tr. 1216. His lumbosacral spine was tender on palpation and range of motion was limited. *Id.* An x-ray showed mild degenerative changes in the lumbosacral junction, Tr. 957, and normal sacroiliac joints. Tr. 958. Plaintiff's treating provider, Scot Kolsin, M.D., found these x-rays "reassuring" and directed Plaintiff to undertake physical therapy for "core strengthening and pain relief." Tr. 1213. Plaintiff's low back pain was marked as "stable" at February 2016 appointment, Tr. 1211, and was not noted as an issue at follow-up appointments through February 2017. Tr. 1182, 1186,

1190, 1194, 1197, 1200, 1203, 1207. Physical therapy was "working well for [his] back pain" during this period. Tr. 1332.

In March 2017, Plaintiff reported "some discomfort" in his lumbosacral spine "again" and requested to attend physical therapy. Tr. 1176. In May 2017, Plaintiff indicated that physical therapy was helping his back pain. Tr. 1173; *see also* Tr. 1327. In August 2017, Plaintiff did not report any back-pain symptoms. Tr. 1170.

In January 2018, Plaintiff began meeting with Dr. Osborn, his new treating physician. Tr. 1270. He complained that he had strained his back again after lifting something heavy. Tr. 1267. He stated that his back pain "comes and goes" over the last several years and that physical therapy was "very helpful" in alleviating symptoms. *Id.* He requested to undergo physical therapy again. *Id.* Dr. Osborn observed that Plaintiff walked with a normal gait, had mild tenderness in the lumbar musculature and sacroiliac joints, with a positive straight leg raise and decreased forward flexion of the spine. Tr. 1269. Dr. Osborn referred Plaintiff to physical therapy. Tr. 1269. In February 2018, Plaintiff reported that he was working at Walmart. Tr. 1271. In April 2018, Plaintiff reported that he had not gone to physical therapy for two weeks due to back and neck pain. Tr. 1273. Plaintiff complained of constant back pain, which became worse with prolonged standing or sitting. *Id.* Plaintiff indicated that he was still working at Walmart on a part-time basis. Tr. 1273. Dr. Osborn observed that Plaintiff walked with a normal gait. Tr. 1274. Dr. Osborn prescribed Plaintiff gabapentin for his neck and back pain. Tr. 1275.

In May 2018, Plaintiff underwent a functional capacity evaluation with Steven Egidi. Tr. 1263. Plaintiff reported that he was working 17-20 hours per week at Walmart. Tr. 1262. Egidi opined that Plaintiff could perform light work with some lifting restrictions. *Id.*

In June 2018, Plaintiff's examination did not reveal any abnormal findings. Tr. 1347. In July 2018, Plaintiff reported that he was "sore" due to physical therapy but believed "it help[ed]." Tr. 1281. Physical therapy notes indicate that, by October 2018, Plaintiff felt "60% improvement in overall function" with therapy. Tr. 1322. Plaintiff could tolerate sitting and suffered from only mild pain when engaging in lifting activities at work. *Id.* Treatment notes from around this time also indicate that Plaintiff's low back pain was "doing better." Tr. 1349. Dr. Dhawan, another treating provider, believed that surgery was not required and that Plaintiff should continue to undertake physical therapy. Tr. 1350.

In April 2020, Plaintiff met with Dr. Osborn to discuss his application for disability. Tr. 1342. He complained of a "bad back," though he was still working at Walmart. *Id.* Dr. Osborn completed a medical source statement on Plaintiff's behalf at that time. She opined that, due to Plaintiff's low back pain, he could not perform at a consistent pace, would be off-task for more than 20% of the workday, and would be absent from work more than four days per month. Tr. 1338-39.

The ALJ conducted a hearing on August 14, 2020. Tr. 61. Plaintiff testified that he was terminated from Walmart in June 2020 because he missed work due to his back pain and chronic bronchitis. Tr. 69. Prior to his termination, Plaintiff worked in the lawn and garden department, where he ran the cash register, organized products on the shelf, and performed other "light" activities. Tr. 71-72. Plaintiff lifted ten to twenty pounds at a time. Tr. 72. Plaintiff testified that his back condition had worsened since June 2018. Tr. 96. In November 2020, Plaintiff had a general physical examination, during which he reported no musculoskeletal symptoms and walked with a normal gait. Tr. 1362, 1364.

The ALJ issued his decision in October 2021.  Tr. 27.  He identified Plaintiff's lumbar degenerative disc disease as a severe impairment, Tr. 18, but concluded that it was not disabling.  Plaintiff's treatment for that condition was intermittent and conservative throughout the relevant period.  *See* Tr. 22.  During examinations, Plaintiff did not show extreme abnormalities, and his imaging did not disclose severe back conditions.  *See* Tr. 22-23.  The ALJ gave little weight to Dr. Osborn's opinion.  Tr. 24.  He noted that Dr. Osborn had not seen Plaintiff in two years at the time she completed the medical source statement.  *Id.*  In addition, the record did not support the identified limitations, given the normal physical examinations, conservative care, and intermittent complaints.  *Id.*

Plaintiff argues that the ALJ's analysis of Dr. Osborn's opinion was improper on several grounds.  None is persuasive.[3]

First, he argues that the ALJ did not have the medical expertise to assess whether Plaintiff's level of care and intermittent complaints were consistent with Dr. Osborn's opinion.  *See* ECF No. 10-1 at 13.  To the contrary, it is "perfectly appropriate for the ALJ to consider Plaintiff's conservative course of treatment in evaluating Plaintiff's credibility."  *Elnora C. v. Comm'r of Soc. Sec.*, No. 19-CV-1072, 2021 WL 695062, at *5 n.4 (W.D.N.Y. Feb. 23, 2021).  The fact that Plaintiff only intermittently complained of back pain—which he resolved through "sporadic[]" physical therapy and other conservative care, Tr. 22, and which did not prevent him from working part-time at Walmart for most of the relevant period, *see id.*—undercuts the credibility of Plaintiff's subjective complaints.  In turn, it undercuts the persuasiveness of Dr. Osborn's opinion, which was premised on Plaintiff's alleged need for "frequent breaks due to low back pain."  Tr. 1338.  This was a good reason to reject Dr. Osborn's opinion.  *See, e.g.*,

---

[3] To the extent Plaintiff makes the general contention that the ALJ's rationale is "unexplained," ECF No. 10-1 at 13; *see also* ECF No. 15 at 4, the Court disagrees.  The ALJ's decision is sufficiently articulated so as to allow the Court to "glean" his rationale.  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

*Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (affirming ALJ's discounting of treating physician's opinion because it was based on claimant's unreliable subjective complaints).

Second, Plaintiff asserts that the ALJ ignored or mischaracterized the evidence when he concluded that Plaintiff had "generally normal physical examinations." Tr. 24. But in substance, Plaintiff's complaint is merely that there was other evidence in the record to support a contrary conclusion. *See* ECF No. 10-1 at 15. That is not a basis for remand. An ALJ is not required "to discuss every shred of evidence in the medical records," *Malloy v. Astrue*, No. 10-CV-190, 2010 WL 7865083, at *20 (D. Conn. Nov. 17, 2010), and the mere fact that some evidence may support a different inference is insufficient to upset the ALJ's factual findings. *See Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277, 2020 WL 6886557, at *5 (W.D.N.Y. Nov. 24, 2020) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). As set forth above, there was sufficient evidence in the record to support the ALJ's conclusion that Plaintiff had "generally" normal physical examinations. Tr. 24. The Court must defer to that resolution. *See Mordean L.*, 2020 WL 6886557 at *5.

Third, Plaintiff asserts that the ALJ erred by relying on Dr. Weiskopf's consultative examination, insofar as it was issued prior to Plaintiff's 2018 MRI. ECF No. 10-1 at 15. The Court is not persuaded. "[T]he mere passage of time does not necessarily render a medical opinion outdated or stale." *Moon v. Comm'r of Soc. Sec.*, No. 17-CV-1312, 2019 WL 2240235, at *6 (W.D.N.Y. May 24, 2019). In this case, while the MRI showed "arthritic changes at L4-L5 and L5-S1," Tr. 1346, Plaintiff fails to meaningfully develop an argument that Plaintiff's back

8

condition deteriorated during this time period and thus rendered Dr. Weiskopf's opinion stale. *See Moon*, 2019 WL 2240235, at *6. In fact, less than one month after the MRI, Egidi concluded that Plaintiff could perform light work with some minor restrictions. *See* Tr. 1262. Without more developed argument, the Court cannot conclude that Dr. Weiskopf's opinion was stale. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Plaintiff's arguments do not reveal an error warranting remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 10, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York